UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**TAMMY ROYAL,** and **LATOYA MATTHEWS** individually, and on behalf of others similarly situated,

Plaintiffs,

**vs.**

**AAA CLUB ALLIANCE INC.**,
a Delaware Corporation,

Defendant.

Case No.

Hon.:

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

Plaintiffs, TAMMY ROYAL and LATOYA MATTHEWS ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant AAA CLUB ALLIANCE INC. ("Defendant"), and state as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article§§ 3-401 *et seq,* ("MWHL"), the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment Article§§ 3-501 *et seq.* ("MWPCL"), the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010 et seq, and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. Defendant offers insurance, travel services, travel information including maps,

guides and information on hotels and restaurants, member discounts, auto repair recommendations, tow truck services and other services to its customers.

3. To provide the above services, Defendant employs remote, hourly Customer Service Representatives ("CSRs") that provide over-the-phone support to Defendant's customers. These CSRs hold a variety of internal job titles, but are all required to perform the same or similar off-the-clock work tasks. Sample job titles include, but are not limited to: Scheduling Advisor, Member Contact Center Sales Associate, Member Insured Sales Agent, Insurance Call Center Sales Agent, Dispatcher, Travel Sales Associate, Dispatch Specialist, and Roadside Assistance Counselor.

4. Within the past two years, Defendant employed Plaintiffs as CSRs.

5. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those jobs held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

6. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

7. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

shift and post-shift job-related activities, must be kept." *Id.*

8. Given the DOL's express guidance on this issue, Defendant's violations of the FLSA were clearly willful or negligent. Either Defendant did not bother to determine whether time spent loading and logging into (or out of) computer systems was compensable, or Defendant knew the time was compensable but nonetheless failed to pay CSRs for this time.

9. Moreover, recently, several circuits have confirmed the DOL's guidance on this issue that employers must pay their CSRs for the pre-shift time they spend booting up their computers and launching software where, like here, it is "integral and indispensable" to their duties and is thus compensable under the FLSA. *Peterson v. NelNet Diversified Sols., LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) ("The preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email."); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 840 (9th Cir. 2022) ("Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their computers at the beginning of their shifts is integral and indispensable and therefore compensable under the FLSA.")

10. Defendant requires its CSRs to routinely work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

11. Defendant requires its CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

12. This policy results in CSRs not being paid for all time worked, including overtime.

13. In the course of performing their job responsibilities, Defendant's CSRs use various computer networks, software programs, applications and phone systems.

14. The time CSRs spend booting up and logging into or shutting down and logging out these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

15. Defendant's CSRs all perform similar computer-based tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

16. Upon information and belief, Defendant's CSRs all follow the same timekeeping process, use the same timekeeping system, and are subject to the same relevant timekeeping and attendance policies.

17. Plaintiffs seek to represent in this action all current and former CSRs that are similarly situated to each other in terms of their remote positions, job duties, pay structure and Defendant's violations of state law.

18. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

19. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

20. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## **JURISDICTION**

21. This Court has subject matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

23. Additionally, this Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 (a), diversity jurisdiction, because the amount in controversy (inclusive of statutory attorney fees) exceeds $75,000 and involves citizens of different states.

24. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

25. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

26. Upon information and belief, Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

27. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

28. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

29. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

30. This Court has personal jurisdiction over Defendant because it conducts business within the state of Delaware, is incorporated in Delaware, and employs individuals within the state of Delaware.

31. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Delaware, has established minimum contacts sufficient to confer jurisdiction over it and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to the Court's personal jurisdiction.

## PARTIES

33. Plaintiff TAMMY ROYAL ("Plaintiff Royal") is a Kentucky citizen who worked for Defendant as a remote CSR in Kentucky within the last three years.

34. Defendant paid Plaintiff Royal for her services in the form of an hourly wage, for all credited hours worked, most recently at $16.00 per hour.

35. Plaintiff Royal has signed a consent to join this collective action lawsuit. *See*, Exhibit 1.

36. Plaintiff LATOYA MATTHEWS ("Plaintiff Matthews") is a Maryland citizen who

worked for Defendant as a remote CSR in Maryland within the last three years.

37. Defendant paid Plaintiff Matthews for her services in the form of an hourly wage, for all credited hours worked, most recently at $18.85 per hour.

38. Plaintiff Matthews signed a consent to join this collective action lawsuit. *See*, Exhibit 2.

39. Defendant is a Delaware Corporation that is registered to do business in Delaware and maintains a registered agent office in Wilmington, DE, with Entity ID #4458659.

## GENERAL ALLEGATIONS

40. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices in Kentucky and Maryland within the last three (3) years.

41. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) remote computer based work including, but not limited to, taking in-bound calls from and making out-bound calls to Defendant's customers who need assistance related to the services it offers; (c) ensuring that calls and work are documented and accounted for in Defendant's systems; and (d) logging out of the computer software programs and applications.

42. CSRs are primarily responsible for assessing the needs of Defendant's customers and assisting them in connection with the services offered.

43. CSRs field inbound calls and make outbound calls to customers.

44. The general nature of the responsibilities, qualifications, and method of compensation are the same or similar for all CSRs.

45. Defendant's CSRs are all hourly, non-exempt positions with rigid full-time

schedules that require them to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) or more hours in a workweek.

46. The full-time schedules result in CSRs routinely working overtime.

47. Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including unpaid overtime, as part of their roles as CSRs.

48. Defendant scheduled its CSRs to work forty (40) hours per week and required them to be call ready the moment they clocked-in for their shifts.

49. Consequently, the cumbersome computer boot-up process occurred off the clock before each shift, and Defendant knew or should have known this uncompensated work was regularly occurring because it created and enforced the very policies and practices that required it.

50. At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

51. Defendant was also responsible for training and continuing its CSRs' education in their roles. Additionally, Defendant provided CSRs with uniform call scripts to read from when interacting with customers.

52. Defendant's remote CSRs all perform similar remote boot up work tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

53. These programs, applications and systems are integral and an important part of the CSRs' remote work, and they cannot perform their jobs without them.

54. Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies. Plaintiffs have attended training and meetings

with numerous other CSRs on these matters.

55. Defendant expressly instructs and trains CSRs to have all of their required computer networks, software programs and applications open and ready at the moment they clock in.

56. Defendant furthermore enforces its policy of requiring all computer networks, programs and applications to be open and ready at the commencement of a CSRs' shift, and critically, before the CSRs record his or her clock-in time, through their performance metrics and adherence policies.

57. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

58. Because CSRs are prohibited or otherwise pressured from including all hours worked on the timekeeping program, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

59. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

60. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than thirteen (13) minutes per day of work performed during the pre-shift process, during their lunch periods, and at the conclusion of their shifts.

61. This time could easily be recorded, accounted for and paid, but for Defendant's choice not to credit such time as time worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

62. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's

remote CSRs perform pre-shift work tasks for which they are uncompensated.

63. Pursuant to Defendant's policies, training and direction, Defendant's remote CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

64. For CSRs the pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) minutes to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

65. Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to complete the following tasks or tasks substantially similar to the tasks below:

a. Turn on their computer;
b. Log-into Windows using a username and password;
c. Log-into Defendant's virtual private network (VPN);
d. Complete a dual authentication process;
e. Load and Log-into Salesforce;
f. Load and Log-into AAA program;
g. Log-into Microsoft Teams (to communicate with team members and supervisors);
h. Log-into Outlook (email) and check emails with work instructions for the day; and
i. Log-into Kronos (timekeeping system) and clock-in.

66. The aforementioned tasks are an integral and essential aspect of the CSRs' job duties and responsibilities, as CSRs must have all of the above-mentioned computer programs, systems, and applications up and running on their computers in order to be prepared to handle calls calls.

67. Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

68. As a result, Defendant maintains a common plan and policy pursuant to which they

fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities and all CSRs have been damaged by virtue of Defendant's failure to pay for these compensable work tasks.

**B. Meal-Period Off-the-Clock Work**

69. Defendant provides their CSRs with a one half hour (30 minute) unpaid lunch break per shift.

70. In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

71. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

72. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

73. Many of the programs used by CSRs, including the VPN, would automatically log CSRs out of their computer systems if they remained idle for too long. As such, this required CSRs to return from their lunches early to log back into programs that they were automatically logged out of during their lunch breaks.

74. CSRs spend approximately two (2) to five (5) minutes performing this work during their unpaid meal breaks on most days.

75. Defendant's management is aware that Plaintiffs and other CSRs perform these tasks off the clock, and could have paid CSRs for this time, but did not.

**C. <u>Post-Shift Off-the-Clock Work</u>**

76. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to securely log out of the essential computer software programs and applications utilized during their shifts.

77. The shutdown and logout process, requires another one (1) to two (2) minutes of off the clock work per shift.

78. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed to begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

79. Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

80. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D. <u>Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies</u>**

81. An example of a specific pay period where Defendant failed to pay Plaintiff Matthews all overtime due for all hours worked as a CSR in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 03/30/25 to 04/05/25**

- Plaintiff Matthews was paid at a rate of $18.85 per hour for the straight time hours Defendant credited her as having worked. Her overtime rate for this period was $28.28, and she was credited with having worked .86 hours of overtime.

- With unpaid pre-shift, meal-period, and post-shift time of no less than thirteen (13) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional sixty-five (65) minutes at her overtime rate of $28.28 per hour during the overtime workweek.

82. The off-the-clock hours at issue herein constitute unpaid overtime hours worked in virtually all pay periods.

**E. <u>Defendant Accepted and Benefitted From the Uncompensated Off-the-Clock Work</u>**

83. At all relevant times, Defendant directed, accepted, and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift and meal-period activities performed by CSRs.

84. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

85. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

86. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed setting up their computers.

87. At all relevant times, remote CSRs were non-exempt hourly employees, subject to the requirements and protections of the FLSA.

88. At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift and meal-period off-the-clock work.

89. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to perform their work duties (i.e., were "phone ready") the moment their shifts began.

90. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift and meal-period activities they performed.

91. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

92. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

93. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

94. Despite knowing CSRs performed work before and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

95. Unpaid overtime wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

96. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former remote, hourly Customer Service Representatives ("CSRs") who worked for Defendant at any time during the three years preceding the filing of the complaint through judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

97. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

98. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid all premium overtime compensation when they worked beyond forty (40) hours in a workweek, as explained herein.

99. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

100. As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their CSRs, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

101. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

102. Indeed, in light of the DOL's guidance (cited above) and the multitude of courts that have held computer boot up time is compensable, no legitimate argument can be made that Defendant's violation of the FLSA was not willful, or at a minimum, reckless.

103. Defendant's unlawful conduct has been widespread, repeated and consistent.

104. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

105. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

106. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

107. The key issue — the Defendant's failure to pay CSRs for pre-shift, mid-shift, and post-shift time spent loading and logging into or out of essential computer systems — does not vary materially among the proposed FLSA Collective members.

108. Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

110. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

111. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

112. The precise number of FLSA Collective members should be readily available from

a review of Defendant's personnel and payroll records.

**RULE 23 MARYLAND CLASS ACTION ALLEGATIONS**
**AND RULE 23 KENTUCKY CLASS ACTION ALLEGATIONS**

113. Plaintiff Royal brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former remote, hourly Customer Service Representatives ("CSRs") who worked for Defendant in Kentucky at any time during the five years preceding the filing of the complaint through judgment.*

(hereinafter referred to as the "Rule 23 Kentucky Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

114. Plaintiff Matthews brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former remote, hourly Customer Service Representatives ("CSRs") who worked for Defendant in Maryland at any time during the three years preceding the filing of the complaint through judgment.*

(hereinafter referred to as the "Rule 23 Maryland Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

115. The members of the Rule 23 Kentucky Class and the Rule 23 Maryland Class (hereinafter, collectively referred to as "State Rule 23 Classes") are so numerous that joinder of all State Rule 23 Class members in this case would be impractical.

116. Plaintiff Royal reasonably estimates that there are hundreds of Rule 23 Kentucky Class members.

117. Plaintiff Matthews reasonably estimates that there are hundreds of Rule 23 Maryland Class members.

118. The State Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

119. There is a well-defined community of interest among Rule 23 Kentucky Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Kentucky Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre- and post-shift time Rule 23 Kentucky Class members spend on start-up/log-in activities and shut-down activities off the clock each shift is compensable time; and

b. Whether Defendant failed to pay all wages and overtime wages owed to the Rule 23 Kentucky Class, as contemplated by the Kentucky Wages and Hours Act ("KWHA").

120. There is a well-defined community of interest among Rule 23 Maryland Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Maryland Class. These common legal and factual questions include, but are not limited to, the following:

c. Whether the pre-and post-shift time Rule 23 Maryland Class members spend on start-up/log-in activities and shut-down activities off the clock each shift is compensable time;

d. Whether Defendant failed to pay all wages and overtime wages owed to the Rule 23 Maryland Class, as contemplated by the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article§§ 3-401 *et seq,* ("MWHL"), and the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment Article§§ 3-501 *et seq.* ("MWPCL")

121. The claims of the Rule 23 State Classes Plaintiffs Royal and Matthews seek to represent are typical of those of the other class members in each respective State Rule 23 Class, in that they and all other State Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Matthews' and Plaintiff Royal's claims arise from the same policies, practices, promises and course of conduct as all other State Rule 23 Class members' claims they seek to be a representative for and

their legal theories are based on the same legal theories as all other Rule 23 State Class members within their respective Classes.

122. Plaintiffs Royal and Matthews will fully and adequately protect the interests of the Rule 23 State Class and they have retained counsel who are qualified and experienced in the prosecution of Maryland and Kentucky wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Classes.

123. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

124. This case will be manageable as a Rule 23 Class action. Plaintiffs Royal and Matthews and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

125. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

126. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 State Classes and declaratory relief is appropriate in this case with respect to the Rule 23

State Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NATIONWIDE CLASS ALLEGATIONS**

127. PlaintiffS bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former remote, hourly Customer Service Representatives ("CSRs") who worked for Defendant at any time during the six years preceding the filing of the complaint through judgment.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

128. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

129. There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether Defendant's failure to pay the Rule 23 Class members for all hours worked at their agreed upon rate constitutes a breach of contract.

b. Whether, if no contract exists between the parties, Defendant was unjustly enriched by virtue of its policies and practices with respect to the Rule 23 Nationwide Class members' compensation and the failure to pay for all hours worked at the agreed upon rate.

130. Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise

from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

131. Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

132. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Nationwide Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

133. This case will be manageable as a Rule 23 Nationwide Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

134. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

135. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule

23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

136. Plaintiffs re-allege and incorporate all previous paragraphs herein.

137. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

138. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

139. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

140. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

141. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

142. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform off-the-clock work every shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

143. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

144. Defendant's violations of the FLSA were knowing and willful.

145. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

146. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

147. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

148. Plaintiffs re-allege and incorporate all previous paragraphs herein.

149. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

150. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each CSR for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

151. Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

152. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of $16.00 or more.

153. Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of

Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the unlawful policies and practices described herein.

154. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

155. On occasion, Rule 23 Nationwide Class members missed time from work causing them to work under 40 hours in a given week.

156. To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

157. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged (to the extent there is no other state law remedy) in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Nationwide Class Action)**
**UNJUST ENRICHMENT**

158. Plaintiffs incorporate by reference all previous paragraphs herein except for those paragraphs, sentences, or averments that allege or imply that an enforceable contract for the payment of wages exists between Plaintiffs and Defendant or the Rule 23 Nationwide Class Members and Defendant.

159. This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract existed between Plaintiffs and Defendant as alleged in Count II. In other words, to the extent that this Court ultimately finds that no contract provision or agreement expressly governs the claims arising from the allegations in this Complaint, Defendant is nonetheless liable for unjustly enriching itself at Plaintiffs' and the Rule 23 Nationwide Class members' expense.

160. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

161. Defendant benefited from the unpaid work performed by Plaintiffs and the Rule Nationwide 23 Class prior to the start of their shifts and after their shifts. Additionally, Defendant benefited by failing to pay their employees at the legal and applicable wage rates set by state and/or federal law, thereby failing to pay all minimum wages and overtime wages in compliance with the law.

162. Defendant was aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

163. Defendant's acceptance and retention of the benefit of Plaintiffs and the Rule 23 Nationwide Class members' unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

164. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**COUNT IV**
**Rule 23 Kentucky Class Action**
**The Kentucky Wages and Hours Act**

165. Plaintiff Royal re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

166. At all relevant times, Defendant was the "Employer" of Plaintiff Royal and the Rule 23 Kentucky Class, pursuant to the KWHA. Ky. Rev. Stat § 337.010(1)(d).

167. At all relevant times, Plaintiff Royal and the Rule 23 Kentucky Class were "Employees" of Defendant, pursuant to the KWHA. Ky. Rev. Stat § 337.010(1)(e).

168. The KWHA provides that "[e]very employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned … [n]o employer subject to this section shall, by any means, secure exemption from it." Ky. Rev. Stat § 337.020.

169. Furthermore, "[e]very such employee shall have a right of action against any such employer for the full amount of his wages due on each regular pay day." *Id.*

170. As set forth herein, Defendant failed to pay Plaintiff Royal and the Rule 23 Kentucky Class all wages earned, as required by the KWHA.

171. Pursuant to the KWHA, "[n]o employer shall withhold from any employee any part of the wage agreed upon." Ky. Rev. Stat § 337.060(1).

172. Defendant unlawfully withheld or deducted from Plaintiff and the Rule 23 Kentucky Class's wages, in violation of the KWHA as set forth in this Complaint.

173. Pursuant to Ky. Rev. Stat § 337.385 of the KWHA, "any employer who pays less than the wages and overtime compensation to which such employee is entitled to under KRS 337.020 to 337.285 shall be liable to such employee for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for and additional

equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court."

174. Defendant has violated the KWHA with respect to Plaintiff and the Rule 23 Kentucky Class by, among other things, failing to compensate them for all hours worked and at time-and-one-half overtime rates for all hours worked in excess of 40 per workweek.

175. By implementing the challenged pay scheme to circumvent the overtime requirements of the KWHA as alleged herein, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

176. Plaintiff Royal and the Rule 23 Kentucky Class seek all wages due, liquidated damages, attorneys fees, and costs for the violations of the KWHA outlined herein.

**COUNT V**
**Rule 23 Maryland Class Action**
**Violation of MWCPL**

177. Plaintiff Matthews re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

178. Plaintiff Matthews and members of the Rule 23 Maryland Class are entitled to wages under the MWPCL, Md. Code Ann., Lab. & Empl. §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid their wages.

179. "Wage" is defined under MWPCL § 3-501(c) as "all compensation that is due to an employee for employment" including "a bonus; a commission; a fringe benefit; or any other remuneration promised for service." "Wage" under the MWPCL also specifically includes overtime wages.

180. Plaintiff Matthews and members of the Rule 23 Maryland Class have not received compensation from Defendant for all wages owed for work performed before the termination of their employment in accordance with §3-505(a).

181. Defendant willfully and intentionally withheld from Plaintiff Matthews and members of the Rule 23 Maryland Class the wages owed to them and continued to violate the MWPCL.

182. All members of the Rule 23 Maryland Class are similarly situated to Plaintiff Matthews and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

183. Under the MWPCL, there is no bona fide dispute that Plaintiff Matthews and members of the Rule 23 Maryland Class are owed additional wages for work performed while employed by Defendants.

184. Defendant is liable to Plaintiff Matthews and all members of the Rule 23 Maryland Class for all unpaid wages in such amounts as are proven at trial, plus two (2) times the amount of unpaid wages as additional damages, interest (both pre- and post- judgment), reasonable attorney's fees, costs, and any other and further relief this Court deems appropriate.

**COUNT VI**
**Rule 23 Maryland Class Action**
**Violation of MWHL**

185. Plaintiff Matthews re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

186. Pursuant to MWHL, Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

187. Furthermore, pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer

shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

188. Plaintiff and the Rule 23 Maryland Class have not received compensation from Defendant reflecting the prescribed overtime wage rate for all hours worked in excess of forty (40) in a week.

189. Defendant willfully and intentionally refused to compensate Plaintiff and the Rule 23 Maryland Class for all the overtime hours they worked.

190. There is no bona fide dispute that Plaintiff and the Rule 23 Maryland Class are owed additional overtime wages for the work they performed for Defendant.

191. All members of the Rule 23 Maryland Class are similarly situated to Plaintiff and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

192. Under the MWHL, Plaintiff and members of the Rule 23 Maryland Class are entitled to additional wages from Defendant for additional overtime hours worked at a rate of one and one half (1.5) times their regular hourly rate.

193. Defendant is liable to Plaintiff Matthews and members of the Rule 23 Maryland Class for unpaid overtime wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the Rule 23 Classes (State and Nationwide), request judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II-VI);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective action members and members of the Rule 23 Classes, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class and Collective members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the Rule 23 Maryland Class (Plaintiff Matthews), the Rule 23 Kentucky Class (Plaintiff Royal), and the Rule 23 Nationwide Class (both Plaintiffs), and undersigned counsel as Class counsel for the same

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Declaring Defendant violated the Maryland and Kentucky wage statutes as cited herein, and that such violations were willful;

h. Declaring Defendant breached its contracts with Plaintiffs and the Rule 23 Nationwide Class, as cited herein;

i. Declaring Defendant was unjustly enriched, as cited herein;

j. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the Collective and the Rule 23 Classes the full amount of damages, liquidated damages and treble damages available by law;

k. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

m. Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 24, 2026

Respectfully Submitted,

**COLLINS PRICE WARNER WOLOSHIN**

***/s/ Raeann Warner***
Raeann Warner (# 4931)
8 East 13th Street
Wilmington, Delaware 19801
Phone: (302) 655-4600
raeann@cpwwlaw.com

**ASH LAW, PLLC**
Charles R. Ash, IV (*PHV forthcoming*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**RODRIGUEZ LAW PLC**
Oscar A. Rodriguez (*PHV Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48103
Phone: (734) 415-9011
oscar@orodlaw.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*